## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DEBORAH M. ROSSICK AND
JACOB M. GODING INDIVIDUALLY
AND AS NATURAL PARENTS OF
AYRA R. GODING, A MINOR,

      Plaintiffs,

v.

ABBOTT LABORATORIES, INC.
d/b/a ABBOTT NUTRITION;
AMAZON.COM, INC.; LAKELAND
REGIONAL HEALTH SYSTEMS,
INC. d/b/a LAKELAND REGIONAL
MEDICAL CENTER; TIMOTHY C.
GOMPF, M.D.; AMANDA L. DAVIS,
M.D.; CLIFFORD L. WU, M.D.; and
THE WATSON CLINIC, LLP,

      Defendants.

Case No.

Judge:

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Abbott Laboratories Inc. ("Abbott") hereby removes this action from the Circuit Court of the Tenth Judicial Circuit in and for Polk County, Florida, where it was pending as Civil Case No. 2022CA-004335-0000-00, to the United States District Court for the Middle District of Florida, Tampa Division.

This case is one of approximately 50 lawsuits filed across the country regarding powdered infant formula allegedly produced at Abbott's

manufacturing facility in Sturgis, Michigan, which was the subject of a voluntary recall last year. Almost all of these cases are currently consolidated into an MDL centralizing cases from across a dozen states and territories. *See* Aug. 5, 2022, Transfer Order, MDL No. 3037, ECF 58 (J.P.M.L.). Unlike the vast majority of these cases, however, the present case was initiated in state court and asserts not only product-liability claims against Abbott, but also *non*-product-liability claims against various medical providers. While Abbott disputes Plaintiffs' product-liability claims related to its powdered infant formula—in particular because the complaint alleges a bacterial infection (*Salmonella*) that both the FDA and CDC have investigated and found unrelated to Abbott's manufacturing facility—for purposes of this notice, their lawsuit belongs in federal court where it should be consolidated into the pending MDL.

As set forth more fully below, removal of this action to this Court is proper because: (1) there is complete diversity of citizenship with respect to Plaintiffs and the properly joined Defendants (Abbott and Amazon.com, Inc., from whom Plaintiffs allege they purchased the subject infant formula); (2) the amount in controversy exceeds $75,000, exclusive of interest and costs; and (3) this Court is the federal district and division embracing the place where the state-court litigation is pending.

## PROCEDURAL REQUIREMENTS FOR REMOVAL

1.    On December 30, 2022, Plaintiffs Deborah Rossick and Jacob Goding, individually and on behalf of their minor child, filed this lawsuit in the Tenth Judicial Circuit Court, Polk County, Florida.  *See generally* Dec. 30, 2022, Compl. (Ex. 1).

2.    Plaintiffs served Abbott with the Summons and Complaint on January 17, 2023.   Pursuant to 28 U.S.C. § 1446(b)(1), this notice is timely filed.

3.    As 28 U.S.C. § 1446(a) requires, Abbott has attached to this Notice of Removal "a copy of all process, pleadings, and other orders served upon" it.[1]  *See* Ex. 3.  Abbott has also attached to this Notice of Removal the state court docket showing all docket entries in this matter, along with copies of each paper docketed in the state court in accordance with Local Rule 1.06(b).  *See* State Court Docket and Filings (Exs. 4, 5).

4.    Amazon.com, Inc. ("Amazon") consents to removal in accordance with 28 U.S.C. § 1446(b)(2)(A).  Abbott understands that Amazon disputes any alleged liability in this action.

5.    Consent is not required from the remaining Defendants—Lakeland Regional Health Systems, Dr. Timothy Gompf, Dr. Amanda Davis, Dr. Clifford Wu, or the Watson Clinic, LLP (collectively the "Malpractice Defendants")—as each of these Defendants were improperly joined in this matter for the reasons set forth below.  *See* 28 U.S.C. § 1446(b)(2)(A) (requiring consent to remove only

---

[1] A copy of the Answer filed by certain Defendants is attached as Exhibit 2.

from "defendants who have been properly joined and served"); *Restivo v. Bank of Am. Corp.*, 618 F. App'x 537, 540 n.5 (11th Cir. 2015) ("A fraudulently joined defendant need not consent to removal."); *see also infra* § II.

6.    On February 13, 2023, Abbott orally notified counsel for the Plaintiffs that Abbott would be filing this Notice of Removal, but upon actual filing, Abbott will provide written notice to Plaintiffs by filing a Notice of Filing Notice of Removal with the state court (attaching a copy of this Notice), as 28 U.S.C. § 1446(d) requires.

7.    This case is properly removed to this Court because the Tenth Judicial Circuit Court, Polk County, Florida, is located within the Middle District of Florida.  *See* 28 U.S.C. § 89(b).  Venue is therefore proper because this Court is the "district and division within which such action is pending."  28 U.S.C. § 1446(a).  Additionally, Plaintiffs allege that they are residents of Polk County. *See* Compl. ¶ 2.

**DIVERSITY JURISDICTION**

## I.    THIS COURT HAS SUBJECT MATTER JURISDICTION.

8.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332. There is complete diversity of citizenship between Plaintiffs and properly joined Defendants Abbott and Amazon (collectively the "Product Defendants"), and the amount in controversy exceeds $75,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(a).

**A.    There Is Complete Diversity Between The Properly Joined Parties.**

9.    Plaintiffs assert claims individually and on behalf of their minor child.  *See generally* Compl.  As noted, Plaintiffs reside in Polk County, Florida, and, therefore, are citizens of Florida for diversity jurisdiction purposes.  *See id.* ¶ 2.

10.    Defendant Abbott Laboratories Inc. is incorporated in Delaware and has its principal place of business in Abbott Park, Illinois; consequently, Abbott is a citizen of Delaware and Illinois for diversity jurisdiction purposes.  28 U.S.C. § 1332(c)(1); *see also* Compl. ¶ 21.

11.    Defendant Amazon is a Delaware corporation with its principal place of business in Washington; consequently, Amazon is a citizen of Delaware and Washington for diversity jurisdiction purposes. 28 U.S.C. § 1332(c)(1); *see also* Compl. ¶ 24.

12.    Plaintiffs allege that the Malpractice Defendants are citizens of Florida.  Compl. ¶¶ 3-15.  As set forth more fully below, however, the Malpractice Defendants were procedurally misjoined, which means that their citizenship can be disregarded for purposes of diversity under 28 U.S.C. § 1332.  *See infra* § II.

13.    Because none of the properly joined Defendants (Abbott and Amazon) are citizens of Florida, there is complete diversity between Plaintiffs and the only properly joined defendants in the case—the Product Defendants.

**B.    The Amount In Controversy Exceeds $75,000.**

14.    Subject-matter jurisdiction based on diversity of citizenship requires that the amount in controversy "exceed[] the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a).  Where, as here, a complaint does not specify a plaintiff's damages demand, a notice of removal need only include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014); *see also Branson v. Medtronic, Inc.*, 2007 WL 170094, at *4 (M.D. Fla. Jan. 18, 2007) ("Plaintiff's Complaint alleges an unspecified amount of damages 'in excess of $15,000.00' ....").  Removal is proper when the amount in controversy is "facially apparent form the complaint" or otherwise supported by the evidence, and the Court may make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" to determine whether the amount in controversy has been met.  *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010).

15.    While Abbott disputes that Plaintiffs are entitled to any recovery at all, it is "facially apparent from the complaint" that the allegations against the Product Defendants easily clear the amount-in-controversy hurdle.  *See id.*  Plaintiffs allege that their infant child "suffered immediate and severe injury" and that they "have incurred substantial medical bills" and "will continue" to suffer injuries "in the future."  Compl. ¶¶ 61-64.  And as part of pre-suit correspondence between the parties, Plaintiffs claimed that they had already purportedly incurred

in excess of $1,000,000 in medical expenses —not to mention lost wages of approximately $50,000.

16.    What is more, Plaintiffs value each Count asserted against Abbott (Counts XIV through XXI) "in an amount in excess of $30,000.00." *See* Compl. ¶¶ 167-243.  In total, Plaintiffs assert eight counts against Abbott, which yields a total assertion of damages in excess of $240,000, well above the $75,000 jurisdictional threshold.  *See* 28 U.S.C. § 1332(a).  Additionally, Plaintiffs value their companion Count against Amazon "in excess of thirty-thousand dollars" as well.  *See id.* ¶ 252 (Count XXII).  The amount in controversy as to the Product Defendants therefore well exceeds the jurisdictional minimum.

## II.  THE MALPRACTICE DEFENDANTS WERE PROCEDURALLY MISJOINED.

17.    "Diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity—every plaintiff must be diverse from every defendant"—with one important exception: "A defendant's 'right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy.'"  *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1359-60 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000) (quoting *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)).

18.    The fraudulent joinder exception applies in any of "three instances: (1) where there is no possibility that the plaintiff can prove a cause of action against the resident (non diverse) defendant; (2) where there is outright fraud in

the plaintiff's pleading of jurisdictional facts; and (3) where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several, or alternative liability *and* the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant." *Stone v. Zimmer, Inc.*, 2009 WL 1809990, at *2 (S.D. Fla. June 25, 2009).

19.    The third instance—sometimes referred to as "procedural misjoinder" or "fraudulent misjoinder"—exists when a plaintiff "attempt[s] to defeat removal by [improperly] joining together claims against … defendants" to "defeat removal" when, "in reality[,] there is no sufficient factual nexus among the claims to satisfy the permissive joinder standard provided under Rule 20 of the Federal Rules of Civil Procedure." *Id.* at *2; *see also M.W. v. Ford Motor Co.*, 2015 WL 1311029, at *4 (M.D. Fla. Mar. 24, 2015) ("[F]ederal courts may disregard citizenship of resident parties … when the factual nexus between" the different claims "is so lacking as to render joinder under Federal Rule of Civil Procedure 20 nothing but an attempt to avoid federal jurisdiction."). Under Rule 20, multiple defendants may be joined in a single action only if both (a) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (b) there is at least one common "question of law or fact" that "will arise in the action." Fed. R. Civ. P. 20(a)(2); *see also Hoever v. Tucker*, 2013 WL 1278976, at *2 (N.D. Fla. Jan. 23, 2013) ("Both prongs of the test must be met in order for joinder to be appropriate.").

8

20.    The procedural misjoinder exception to complete diversity applies here.  Plaintiffs have attempted to join two distinct sets of claims against two distinct sets of defendants—the Product Defendants and the Malpractice Defendants—in the same lawsuit even though there is "no real connection" between these claims and defendants.  *See Stone*, 2009 WL 1809990, at *2. Liability for the malpractice claims (including "medical negligence" and "vicarious liability" as between doctors and their medical facility employers) will turn on evidence and legal standards wholly irrelevant to the product-liability claims, and the reverse is true as well.  Perhaps for that reason, Plaintiffs fail to (and could not) assert "any right to relief" against the disparate classes of defendants "jointly, severally, or in the alternative" under the circumstances here. Fed. R. Civ. P. 20(a)(2).  Because the "factual nexus" between these distinct claims "is so lacking" that it "render[s] joinder … nothing but an attempt to avoid federal jurisdiction," the Court should disregard the Malpractice Defendants' citizenship for purposes of diversity jurisdiction and allow the claims against the Product Defendants to proceed separately in federal court.  *See Ford Motor*, 2015 WL 1311029, at *4.

## A.    An Insufficient Factual Nexus Connects The Claims.

21.    The Malpractice Defendants are procedurally misjoined because Plaintiffs' claims against them arise out of distinct factual events that have no relation to the central factual and legal questions at issue in the claims asserted against the Product Defendants.

22.    Under Rule 20, multiple defendants may be joined in a single action only if a "right to relief … asserted against them … aris[es] out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A).  Claims arise out of the same transaction or occurrence if they share a "logical relationship." *Constr. Aggregates, Ltd. v. Forest Commodities Corp.*, 147 F.3d 1334, 1337 n.6 (11th Cir. 1998).  "Under this test, there is a logical relationship when the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claims rests activates additional rights, otherwise dormant, in the defendant." *Republic Health Corp. v. Lifemark Hosps. of Fla., Inc.*, 755 F.2d 1453, 1455 (11th Cir. 1985) (quotations omitted); *see also Ford Motor*, 2015 WL 1311029, at *3 ("[T]here is a logical relationship when the same operative facts serve as the basis of both claims." (quotations omitted)).

23.    Here, there is **no** "logical relationship" between the distinct claims against each set of defendants because "the same operative facts" **will not** "serve as the basis of both [types of] claims" for at least two reasons.  *Ford Motor*, 2015 WL 1311029, at *3 (quotations omitted).  <u>First</u>, the injuries allegedly caused by the Product Defendants are distinct from those caused by the Malpractice Defendants.  Plaintiffs allege the initial injuries occurred "shortly after" their child consumed purportedly contaminated formula manufactured, marketed, and/or sold by the Product Defendants.  *See* Compl. ¶ 61.  Subsequently, Plaintiffs allege **separate** injuries related to subsequent medical care and misdiagnosis that allegedly occurred at a different time and place and involved

distinct actors who allegedly failed to take appropriate steps to remedy the child's medical condition—regardless of the original cause of that condition. *See id.* ¶ 64 (Plaintiffs took their child to the medical center on October 4, 2021, "with a history of persistent fever, fussiness, vomiting and nasal congestion" where she was diagnosed with a urinary tract infection); *id.* ¶¶ 65-72 (describing how the child's condition "escalated" after her first visit to the medical center; how she returned for medical care on multiple occasions, including when she was "septic and experiencing seizures"; how she was allegedly misdiagnosed until sometime around October 21, 2021).

24.    <u>Second</u>, the factual evidence necessary to support the claims against the Product Defendants will be "entirely distinct" from those "necessary to support [the] medical malpractice claims." *Ford Motor*, 2015 WL 1311029, at *4. Plaintiffs' "claim against [the Malpractice Defendants] sound[] in medical malpractice, and [will] require evidence on medical care, treatment and services," whereas Plaintiffs' "claims against [the Product Defendants] are product liability ... claims" that will require distinct "evidence on the development, manufacture and testing of" infant formula. *Stone*, 2009 WL 1809990, at *4; *see also Ford Motor*, 2015 WL 1311029, at *4 (similar); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 2007 WL 2572048, at *2 (D. Minn. Aug. 30, 2007) (similar); *Hughes v. Sears, Roebuck & Co.*, 2009 WL 2877424, at *6 (N.D.W.V. Sept. 3, 2009) (similar); *In re Rezulin Prods. Liab. Litig (MDL No. 1348)*, 2003 WL 21276425, at *1 (S.D.N.Y. June 2, 2003)

("The ... other claims go principally to the safety ... of the [product] and have little if anything to do with the malpractice claim.").

25.    Given stark differences like these, it is unsurprising that numerous federal courts, including courts in this district, have found procedural misjoinder in analogous cases in which plaintiffs have concurrently sought to assert claims for medical malpractice against healthcare providers and product-liability claims against manufacturers and sellers. *See, e.g., Williams v. Zimmer Holdings, Inc.*, 2005 WL 8159804, at *5 (M.D. Fla. Dec. 28, 2005) ("[P]roducts liability claims ... are factually and temporally distinct from [the] medical malpractice claims. ...  [Plaintiff] was injured by each group of defendants in separate and distinct ways."), *report & recommendation adopted* 2006 WL 8439408 (M.D. Fla. June 15, 2006); *In re Guidant*, 2007 WL 2572048, at *2  (concluding malpractice claims related to the implant and removal of a defective defibrillator were wholly distinct from the product claims against the manufacturer); *In re Rezulin*, 2003 WL 21276425, at *1 ("The breach of warranty and other claims go principally to the safety and efficacy of the drug and have little if anything to do with the malpractice claim. ... [J]oinder ... was inappropriate ....").

26.    In *Ford Motor*, for example, the plaintiff brought claims against Ford and non-diverse medical providers after she was injured when (i) an alleged defect in her Ford Focus caused the vehicle to unexpectedly roll down a driveway and injure her, and (ii) medical providers then negligently exacerbated those injuries.  2015 WL 1311029, at *1.  The court severed the non-diverse defendants,

reasoning that "the factual nexus between these [medical malpractice] claims and claims of the diverse parties is so lacking as to render joinder under Federal Rule of Civil Procedure 20 nothing but an attempt to avoid federal jurisdiction," as the factual allegations needed to assert the claim against the manufacturer were "entirely distinct" from those "necessary to support [the] medical malpractice claims." *Id.* at *4. The court reasoned that, whereas "the facts that would support a medical malpractice claim" would "involve questions regarding the medical appropriateness of two separate surgeries … and the quality of medical care she received in connection therewith," the facts plaintiff needed to "support [her] product liability and negligence claims against Ford and Enterprise" would "involve factual questions related to the design, engineering, manufacture, marketing, advertising, and maintenance of the vehicle involved in the … incident." *Id.*

27.    *Ford Motor* is not an outlier. A sister federal court in Florida reached a similar conclusion in *Stone*, holding that "[t]he joinder of the malpractice claim against [medical providers] with the product liability claim against" the manufacturer of a hip implant was "inappropriate." 2009 WL 1809990, at *4. There, the implanted device had allegedly "fracture[d] and split … inside [the plaintiff's] femur" following surgery. *Id.* at *1. The plaintiff subsequently presented to a doctor for "pain management treatment," but was allegedly misdiagnosed, delaying what should have been a rapid replacement surgery to remedy the problem. *Id.* The plaintiff then sued both the

13

manufacturer of the hip implant and the medical providers who misdiagnosed the problem in the same action, which the court determined was improper because the plaintiff's "claim against [the medical provider] sounds in medical malpractice, and would require evidence on medical care, treatment and services" whereas the plaintiff's "claims against [the manufacturer] are product liability and general negligence claims" that "would require [distinct] evidence on the development, manufacture and testing of [the] implant." *See id.* at *4.

28.     Courts around the country have reached similar conclusions.  In *Hughes*, for instance, the Northern District of West Virginia found procedural misjoinder in a combined products liability and medical malpractice case.  2009 WL 2877424, at *7.  There, the plaintiff was injured when her treadmill allegedly malfunctioned and threw her to the ground; she sued the treadmill's manufacturer and seller, along with a non-diverse doctor who allegedly misdiagnosed her injury on the day she fell off the treadmill.  *Id.*, at *1.  The diverse defendants removed to federal court, arguing that joinder of the doctor was improper because "proximity in time is not enough to blend … two distinct and separate events."  *Id.* at *5.  The court agreed and severed the case, reasoning, *inter alia*, that (i) the product and malpractice claims were legally distinct, as liability for malpractice would have "absolutely no effect" on "liab[ility] under a theory of products liability" or vice versa; (ii) the claims were factually distinct, as the supporting evidence for the claims would be "markedly different"; and (iii) the claims did not arise out of the same transaction or

occurrence because the product claims arose "from the design, testing, manufacture, and sale of a consumer product," whereas the malpractice claim arose because the plaintiff "eventually sought treatment" from a doctor that "allegedly provided a misdiagnosis." *Id.* at \*6-7.  In reaching this conclusion, the court noted that the case was "not such a close call" because the misdiagnosing doctor "had no control over the allegedly defective product," cementing the fact that the claims did "not arise from the same transaction or occurrence." *Id.* at \*6.

29.    Just as in these analogous cases, the two classes of claims in this case do not arise out of the same transaction or occurrence:  the product claims are rooted in allegations concerning "the design, testing, manufacture, and sale of a consumer product," whereas the malpractice claims relate to the Plaintiffs' choice to "eventually [seek] treatment" from medical providers that "allegedly provided a misdiagnosis." *Id.*  As a mere matter of timing and logic, Plaintiffs' malpractice claims will revolve around "the quality of medical care" that the minor received *after* falling ill, requiring evidence that the Malpractice Defendants failed to live up to the standard of care—matters irrelevant to the product liability claims. *Ford Motor*, 2015 WL 1311029, at \*4; *see also Stone*, 2009 WL 1809990, at \*4 (similar).  By contrast, their product liability claims will turn on different questions related to product manufacture, marketing, and advertising and require "evidence on the development, manufacture and testing of" the formula— matters irrelevant to Plaintiffs' malpractice claims. *Stone*, 2009 WL 1809990, at \*4.  The evidence required to prove either type of claim will be "markedly

different" and liability for each distinct type of claim here will have no impact on the other type of claim. *Hughes*, 2009 WL 2877424, at *6.

30.    In the end, the distinct events that allegedly give rise to the claims against the Malpractice Defendants and the Product Defendants are at most allegedly temporally proximate, nothing more. And "proximity in time is not enough to blend … two distinct and separate events" together. *Id.* at *5. Because there is no "logical relationship" between these claims, they do not arise out of the same transaction or occurrence and do not belong in the same action. *See Ford Motor*, 2015 WL 1311029, at *3. The Court should therefore disregard the improperly joined Malpractice Defendants rather than depriving the Product Defendants of their removal right; there is complete diversity.

## B.    No "Right To Relief is Asserted Against" The Product Defendants And Malpractice Defendants "Jointly, Severally, Or In The Alternative."

31.    Independent of the above, joinder of the Product Defendants with the Malpractice Defendants is also improper here under Rule 20 because Plaintiffs do not assert a "right to relief … against them jointly, severally, or in the alternative." Fed. R. Civ. P. 20(a)(2)(A); *see generally* Compl. Plaintiffs instead bring distinct malpractice claims against the Malpractice Defendants in Counts I through XIII. Plaintiffs then assert wholly distinct product-liability claims against the Product Defendants in Counts XIV through XXII. There is *no* overlap between these claims whatsoever; they are distinct theories of liability brought against distinct types of defendants for distinct conduct. Simply put, liability for

malpractice against the Malpractice Defendants will have "absolutely no effect" on "liab[ility]" against the Product Defendants "under a theory of products liability," or vice versa. *Hughes*, 2009 WL 2877424, at *6.

32.    In any event, Plaintiffs could not allege joint, several, or alternative liability between the two types of defendants under the factual allegations in this case. To start, joint and several liability is unavailable because, under Florida law, when a medical provider aggravates an injury inflicted by an original tortfeasor like a manufacturer, "the original tortfeasor and the subsequently negligent health care providers are independent tortfeasors and not joint tortfeasors jointly and severally liable for one common injury." *Ass'n for Retarded Citizens-Volusia, Inc. v. Fletcher*, 741 So. 2d 520, 524 (Fla. 5th DCA 1999); *see also Ford Motor*, 2015 WL 1311029, at *4 (concluding that similar allegations could "not support a finding of joint and several liability ... under Florida law").

33.    Alternative liability is also unavailable under these circumstances. Plaintiffs' recovery under each tort theory (malpractice and products liability) is not mutually exclusive, because the theories are wholly distinct and "arise out of an entirely different set of operative facts." *Ford Motor*, 2015 WL 1311029, at *4. The cause of the minor's illness for which Plaintiffs sought treatment—whether it was caused by allegedly contaminated infant formula or not—has no bearing on the question of whether the Malpractice Defendants committed malpractice in their alleged failure to properly diagnose and/or treat the Plaintiffs' child in the

weeks following the initial alleged injury.  Likewise, whether the Malpractice Defendants committed malpractice in treating the minor has no bearing on the question of whether Abbott's infant formula caused any injury at all.  *See id.* (concluding that a factfinder would need to assess "two separate and distinct transactions" "to determine liability" because "the facts that would support a medical malpractice claim" against the Malpractice Defendants "involve questions regarding … the quality of medical care" whereas the "facts that would support product liability … claims against" the Product Defendants "involve [distinct] questions related to … design, … manufacture, … marketing, [and] advertising."); *see also Hughes*, 2009 WL 2877424, at *6 ("[A]ny liability that may be found against [the manufacturer and the seller] or [the doctor] would not be a basis for liability as to the other, and separate liability as to each could be found."); *In re Guidant*, 2007 WL 2572048, at *2 (similar).

34.    Likely for these reasons, Plaintiffs did not even attempt to assert a "right to relief" against both the Malpractice Defendants and the Products Defendants "jointly, severally, or in the alternative," as Rule 20(a) requires. Fed. R. Civ. P. 20(a).  The Malpractice Defendants have been procedurally misjoined for this reason alone.

### III. EVEN IF PROPERLY JOINED, THIS COURT SHOULD EXERCISE ITS DISCRETION UNDER RULE 21 AND SEVER THE MALPRACTICE CLAIMS.

35.    In the alternative, Abbott respectfully requests that this Court exercise its discretion to sever and remand Plaintiffs' claims against the Malpractice Defendants under Rule 21.

36.    "It is firmly established that Rule 21 'invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time,' such as when necessary to establish federal subject-matter jurisdiction." *Payroll Mgmt., Inc. v. Lexington Ins. Co.*, 815 F. 3d 1293, 1298 n.8 (11th Cir. 2016). Under Rule 21, a district court may "dismiss a nondiverse dispensable defendant from an action"—*i.e.*, dispensable under Rule 19—"in order to *perfect* diversity." *Byrd v. Howse Implement Co.*, 227 F.R.D. 692, 694 (M.D. Ala. 2005) (emphasis in original) (citing *Anderson v. Moorer*, 372 F.2d 747, 750 n.4 (5th Cir. 1967)). It is proper to do so both when cases are initially filed in federal court or (as here) when cases are removed from state court. *See id.*; *Clements v. Essex Ins. Co.*, 2016 WL 3144151, at *3 (M.D. Fla. June 6, 2016) (severing dispensable, non-diverse defendant and denying remand following removal, explaining that severance of the non-diverse defendant "preserves the Court's diversity jurisdiction").

37.    *Joseph v. Baxter Int'l, Inc.* is particularly instructive on this question.  614 F. Supp. 2d 868 (N.D. Ohio 2009).  There, the plaintiffs brought products liability claims against an out-of-state drug manufacturer and

malpractice claims against in-state health care providers.  *Id.* at 870-71.  The manufacturer removed, and the plaintiffs sought remand.  The district court denied remand as to the diverse manufacturer defendant, however, reasoning that the healthcare-provider defendants were "not necessary parties as the resolution of a claim against them would not necessarily resolve the [plaintiffs'] claim against [the manufacturer]" because the medical malpractice claims against the healthcare providers "differ from the [plaintiffs'] products liability claim" against the manufacturer.  *Id.* at 872.  The court further explained that the healthcare-provider defendants were dispensable because the plaintiffs "retain an adequate remedy against the Healthcare Defendants as they can proceed with their claims in state court."  *Id.* at 873.  Given the separate factual basis for plaintiffs' medical malpractice claims against the healthcare providers, the court found that it could "sever them from the claims against [the manufacturer], and in doing so, perfect diversity jurisdiction over [the manufacturer]."  *Id.* at 874.[2]

38.    Other federal courts have followed this same approach. *See, e.g.*, *Sullivan v. Calvert Mem'l Hosp.*, 117 F. Supp. 3d 702, 706 (D. Md. 2015) (exercising discretion to sever products and malpractice claims because "the medical negligence claims ... involve[d] legal standards and factual inquiries distinctly different from the products liability claims"); *DeGidio v. Centocor, Inc.*, 2009 WL 1867676, at *3 (N.D. Ohio June 29, 2009) (severing malpractice

---

[2] Because the court reached its conclusion under Rule 21, it did not address whether the severed defendants had been procedurally misjoined.  *Id.*

defendants who were "not necessary parties" because the claims against them and a drug company "involve[d] different legal standards and different factual allegations"); *Mayfield v. London Women's Care, PLLC*, 2015 WL 3440492, at *4 (E.D. Ky. May 28, 2015) (severing and noting that "[j]ust as no one from [manufacturer] was involved with [plaintiff's] surgery, [the doctor] had nothing to do with the design, manufacture or sale of a single pelvic mesh implant").

39.    Consequently, even if the Court declines to find procedural misjoinder, it should alternatively sever the Malpractice Defendants and deny remand as to the Product Defendants, consistent with the authority cited above. *See supra* ¶¶ 24-28.  The Malpractice Defendants are plainly dispensable here for all the reasons described above, and "complete relief can be afforded" without the presence of the Malpractice Defendants.  *See* Fed. R. Civ. P. 19(a).  Plaintiffs have asserted here two entirely distinct types of claims against two entirely distinct classes of defendants that involve distinct questions of fact, law, and, ultimately, liability.  *See supra* § II.  What is more, even after severance, Plaintiffs will "retain an adequate remedy against the" Malpractice Defendants and will not be prejudiced by severance because Plaintiffs can simply "proceed with their claims" against those defendants "in state court."  *Joseph*, 614 F. Supp. 2d at 873.  There is no reason these distinct claims cannot be pursued in separate actions.

## IV.    SEPARATING THE CLAIMS IS PARTICULARLY APPROPRIATE HERE GIVEN THE RELATED MDL.

40.    Finally, separating the Malpractice Defendants and retaining jurisdiction over the claims against the Product Defendants is particularly

appropriate here.  This case is one of approximately 50 lawsuits pending across the country regarding Abbott recalled infant formula.  The vast majority of these cases have been consolidated into an MDL to "promote the just and efficient" allocation of litigation presenting similar issues.  *See* 28 U.S.C. § 1407(a).

41.  Retaining jurisdiction over the claims against the Product Defendants would allow the Judicial Panel on Multidistrict Litigation to transfer the overlapping claims to the MDL Judge who is already handling these same products liability issues in analogous cases, including cases asserting claims under Florida law.  Such transfer would conserve judicial resources and promote the just and efficient resolution of parallel litigation.  That is a "critical policy reason" to sever the claims here.  S*ullivan*, 117 F. Supp. 3d at 707.

42.  Remanding the claims against the Product Defendants in cases like this one, by contrast, would "[f]orc[e]" Abbott "to litigate" parallel products liability "claims in state courts throughout the country whenever and wherever the claims might be joined to claims against healthcare providers."  *Id.*  Such a result "would defeat the entire purpose of the MDL."  *Id.*  For that reason, courts have often held that severance is particularly appropriate where it will permit the parties in federal court to benefit from the efficiencies of an MDL.  *See, e.g.*, *Cooke-Bates v. Bayer Corp.*, 2010 WL 3984830, at *4 (E.D. Va. Oct. 8, 2010) ("[I]f the claims are not severed, Bayer will be forced to defend claims in state court, running the risk of inconsistent rulings and duplicative discovery in state court and the MDL proceedings."); *Sullivan*, 117 F. Supp. 3d at 707; *Mayfield*,

2015 WL 3440492, at *5 (noting benefits of MDL transfer for plaintiffs such as having "[t]he cost and burden of litigating against Ethicon ... drop considerably," "enhanc[ing]" their "ability to negotiate a settlement," and allowing for more efficient discovery); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 1999 WL 554584, at *5 (E.D. Pa. July 16, 1999) (finding misjoinder where selection of parties could "interfere[] with the court's ability to administer this [MDL] case").  This Court should therefore either find procedural misjoinder or exercise its discretion to sever under Rule 21 to promote the efficiencies of the related MDL.

## CONCLUSION

For the foregoing reasons, Abbott properly removes this action to this Court.

23

Dated:  February 14, 2023          Respectfully submitted,

*/s/ Joshua C. Webb*

Joshua C. Webb (FBN 051679)
HILL, WARD & HENDERSON, P.A.
101 E. Kennedy Boulevard, Suite 3700
Tampa, FL 33602
Tel: (813) 221-3900
Fax: (813) 221-2900
Joshua.webb@hwhlaw.com

James F. Hurst, P.C. (*pro hac vice forthcoming*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: 312-862-2000
Fax: 312-862-2200
james.hurst@kirkland.com

Michael A. Glick (*pro hac vice forthcoming*)
Erin E. Cady (*pro hac vice forthcoming*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, DC 20004
Tel: 202-389-5000
Fax: 202-389-5200
michael.glick@kirkland.com
erin.cady@kirkland.com

*Attorneys for Abbott Laboratories Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System and served a copy of the foregoing via email to all counsel of record to the parties in the state court action.


Dated:  February 14, 2023                   */s/ Joshua C. Webb*
                                                  Joshua C. Webb